**Paul CODY, Plaintiff, Appellant,**

v.

**BECKMAN INSTRUMENTS, INC.,
Defendant, Appellee.**

**No. 7654.**

United States Court of Appeals,
First Circuit.

Nov. 10, 1970.

5, 1967; and (3) the General Electric "expansion sale" in February 1968. The district court awarded him compensation for item 2 in the amount of $5,830, which is not in dispute here, but found that he had already been compensated for items 1 and 3 as part of a $17,500 accord and satisfaction concluded in January 1968. Plaintiff appeals from that judgment.

Nicholas J. Decoulos, Peabody, Mass., for plaintiff-appellant.

Donald N. Sweeney, Boston, Mass., with whom Goodwin, Procter & Hoar, Boston, Mass., was on brief, for defendant-appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

In the years 1966 through June 1968, plaintiff, a resident of Massachusetts, was employed as a salesman by defendant, a California corporation that manufactures computers and other electronic equipment. During that period he was paid an annual salary of $17,000 to $18,200 and received commissions over and above his salary that ranged from 1/4% to 2%, pursuant to various company "incentive compensation plans."[1] This diversity action is for compensation allegedly owed to the plaintiff under certain of the incentive compensation plans. The case was tried to the district court sitting without a jury. Plaintiff claimed commissions for three items: (1) sales and leases made prior to July 1, 1967; (2) a sale to the National Aeronautics and Space Administration on December

He attacks the validity of the January 1968 accord and satisfaction on the ground that Sears, a former Beckman employee who negotiated the accord with plaintiff, lacked authority to bind the defendant. Plaintiff conceded at oral argument, however, that, even if Sears lacked authority, his actions were subsequently ratified by the defendant. Defendant's understanding of the terms of the accord and satisfaction was incorporated in a letter to plaintiff dated January 16, 1968; which letter plaintiff now contends did not conform to his understanding of the accord he had reached orally with Sears. The letter stated: "I would appreciate it if you would sign the attached copy of this memo and return it to me to indicate your agreement with the above." Plaintiff contends that, because he failed to sign the letter, he is not bound by its terms. He did accept the $17,500, however. "[T]he acceptance and collection of a check, proffered upon condition that it is in full settlement of an unliquidated claim, even though accompanied by protestations that it is not so received, bars any attempt to collect the balance * * *." Worcester Color Co. v. Henry Wood's Sons Co., 209 Mass. 105, 109, 95 N.E. 392, 394 (1911). Plaintiff conceded at oral argument that, if he is bound by the accord and satisfaction, he is precluded from asserting the item 1 claim.

1. The Scheufele Plan, effective January 1 through June 30, 1966, and the Ball Plan, effective July 1 through December 31, 1966, were general plans, under which defendant paid commissions to all its "account representatives." The "special NASA plan," effective July 15 through November 15, 1966, overlapped with the two general plans and was designed to give salesmen a special incentive to sell the NASA computer system "as soon as possible." The Zugenbuhler Plan, effective November 10, 1967, through February 9, 1968, applied only to sales made by plaintiff herein.

■ Upon a careful review of the record, we conclude that plaintiff is entitled to his item 3 claim, a commission on the General Electric "expansion sale" and that the district court's finding that this sale was covered by the $17,500 settlement is clearly erroneous.[2] The February 1968 expansion sale took place *after* plaintiff had accepted the settlement. In its January 16, 1968, letter, defendant made clear its understanding that the settlement covered only "incentives that we owe you *to date*." (Emphasis supplied.) Sears testified that the settlement covered "all *prior* sales on Mr. Cody's part for which he had not been compensated.' (Emphasis supplied.) And defendant's January 25, 1968, letter stated that plaintiff would be eligible for incentive compensation on future sales under the so-called "Zugenbuhler Plan." See note 1, *supra*.

At oral argument defendant took the position that plaintiff's $18,000 salary fully compensated him for his work. But the record reveals that during the period in question defendant placed heavy reliance on incentive compensation plans to sell its products. In explaining the Scheufele Plan, note 1, *supra*, to its salesmen, defendant stated:

> "The following compensation plan should be concrete evidence to you of Beckman Management's recognition of the shift in objectives of the Systems Division. The direction we are now taking will lead us to a more product-oriented and sub-system type of business, to less dependency on government business, and to a more profitable operation."

Formal written incentive compensation plans were in effect during at least half the period in question. Defendant also recognized plaintiff's claims to incentive compensation for sales made during periods when no formal plan was in effect. For example, in calculating its $17,500 settlement offer, defendant conceded that plaintiff was entitled to compensation for sales totaling $130,000 made when no plan was in effect.

The General Electric expansion sale consisted of four purchase orders as follows:

| Order Date | Amount |
|---|---|
| 2- 1-68 | $ 64,300 |
| 2-19-68 | 750 |
| 2-22-68 | 34,735 |
| 2-23-68 | 44,158 |
| | $143,943 |

Plaintiff contends he is entitled to a commission on this sale under the so-called Zugenbuhler Plan. That "plan" was actually a special agreement between defendant and plaintiff set forth in a memorandum dated November 14, 1967. According to this memorandum defendant agreed to pay plaintiff a 1% commission on all "expansion sales" of at least $100,000. Defendant claims it owes no commission for the General Electric expansion sale because only a $64,300 purchase order was placed prior to the expiration of the "plan" on February 9, 1968.

We note that the Zugenbuhler agreement of November 14, 1967, made specific reference to the possibility of a sale of a $150,000 expansion system to General Electric. It thus appears that one purpose of- the agreement was to encourage plaintiff to make that sale. Plaintiff contends that General Electric

---

2. The source of the district court's error appears to be testimony by Sears that commissions on General Electric and M.I.T. sales were covered by the accord and satisfaction. An examination of Sears' testimony in its entirety reveals that he was referring to the so-called General Electric and M.I.T. "buyouts" of August 12, 1966, and December 7, 1966, respectively, not to the General Electric expansion sale in February 1968.

was prepared to complete the negotiations on January 29, 1968, but delayed doing so because defendant raised the price on certain items at the last minute. Although this contention is not corroborated, we note that defendant did acknowledge some obligation to plaintiff when on August 27, 1968, it offered him a 1% commission on the $64,300 purchase order—notwithstanding the fact that it now claims the $100,000 minimum was not met on time.

■ We hold that the $64,300 purchase order submitted by General Electric on February 1—followed by purchase orders for the remaining $79,643 within two weeks after the expiration of the Zugenbuhler agreement—were sufficient to constitute substantial compliance on plaintiff's part. An examination of the record reveals that defendant did not always limit incentive compensation earnings under each "plan" strictly to the time period during which that plan was in operation. For example, in calculating its estimate of plaintiff's earnings from sales resulting from negotiations during two different six-month incentive plans, defendant did not hesitate to "lump both bookings into the same 6 month period." Conversely, when it felt that immediate sales were of vital importance, as in the so-called "special NASA plan," note 1, *supra*, defendant specified that its purpose was "to encourage the sale of this system as soon as possible" and provided an incentive compensation formula that declined linearly after 30 days. *See* Restatement of Contracts § 276 (1932). Since the Zugenbuhler agreement did not specify that "time was of the essence," since plaintiff substantially complied with its terms, and since defendant received the full benefit of the order, we conclude that plaintiff is entitled to a 1% commission on the $143,943 General Electric expansion sale.

Reversed and remanded to the district court for proceedings consistent with this opinion.